RECEIVED

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**

**EDWIN BALLARD**

**(PLAINTIFF)**

**VS.**                                        **CIVIL ACTION NO.** _____
**TOYOTA MOTOR CORPORATION**
**Also known as, TOYOTA MOTOR NORTH AMERICA INC**
**Also Known as/ Dba TOYOTA BODINE ALUMINUM, INC**

**(DEFENDANT)**

# JURY DEMANDED

---

# COMPLAINT

---

1.  COMES NOW, Plaintiff, and brings this action against his former employer for employment discrimination based upon his mental and physical disability and for retaliation in violation of Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S. C. {791, Section 717 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. {2000e-16 and 29 C.F.R. {{1614.101 (a) and (b). Jurisdiction is specifically conferred on the court by 42 U.S.C.} 2000e-5. Equitable and other relief are also sought under 42 U.S. C. {2000e-5(g).

2.  Plaintiff Edwin Ballard, is an African American male and a citizen of the United States, and resides at 129 Dogwood Cove, Medina, Tennessee, 38355, (731) 267-4911.

1

3.  Defendant Toyota Motor Corporation is a Japanese automotive manufacturer headquartered in Toyota, Aichi, Japan. In March 2014 the multinational corporation consisted of 338,875 employees worldwide and, as of February 2016, is the 13th-largest company in the world by revenue.  A wholly owned subsidiary of Toyota Motor Corporation, Toyota Motor North America is the holding company for all of its parent's North American operations, covering sales, engineering, and manufacturing subsidiaries from offices in New York, Miami, and Washington, DC. It oversees functions related to government and regulatory affairs, energy, economic research, philanthropy, advertising, corporate communications, and investor relations. Through its manufacturing operations, Toyota Motor Engineering & Manufacturing North America, Toyota builds vehicles and parts at a dozen plus plants in North America. Toyota was the largest automobile manufacturer in 2012 ahead of the Volkswagen Group and General Motors. In July of that year, the company reported the production of its 200-millionth vehicle. Toyota is the world's first automobile manufacturer to produce more than 10 million vehicles per year. It did so in 2012 according to OICA, and in 2013 according to company data. As of July 2014, Toyota was the largest listed company in Japan by market capitalization and by revenue. Defendant's Bodine Aluminum was established in 1912 by Jesse R. Bodine as a privately held supplier of patterns that offered outstanding value.  The company flourished during the war years and became one of the largest producers of aluminum castings in the country.  A new chapter in the history of Bodine Aluminum developed with the acquisition in 1990 by Toyota Motor Corporation.  Today, Bodine is a financially secure global supplier with three modern foundries totaling more than 180,000 square feet of manufacturing space. Defendant's Bodine Aluminum, Inc has three locations: Bodine Aluminum Troy Mo, which manufactures

aluminum cast parts for Toyota engine plants in North America, Bodine Aluminum Jackson Tennessee, manufacturing aluminum cast parts for Toyota engine plaints in North America and Bodine Aluminum St. Louis, a job foundry providing quality parts to customer nationwide. Defendant's St Louis facility features over 250 skilled employees and production capacity exceeding 12,800,000 pounds per year. Current annual sales exceed $32 million. Quality comes standard at Bodine. Nothing is more important to Defendant than reliable casting performance in the shop and in service. ISO certified, Defendant's Bodine prides itself on many long term relationships with major OEM companies. Defendant Toyota broke ground in Jackson, Tennessee, in November 2003 to cast aluminum cylinder blocks and production started two years later with the first V6 engine shipped to Toyota Motor Manufacturing Kentucky. Toyota's Bodine Aluminum currently produces aluminum cylinder blocks and automatic transmission housings for all North America-produced Toyota vehicles.

4. Defendant's corporate headquarters is listed as being located Toyota Motor North America Inc Corporate Office is 1114 Avenue of The Americas New York, NY, 10036 United States (212) 223-0303

5. Plaintiff was employed by the defendant in its Tennessee. TOYOTA - Bodine Aluminum Tennessee, 301 James Lawrence Road Jackson, 38301. (636)462.1071.

6. Defendant unlawfully discriminated against Plaintiff in the manner indicated in paragraphs 9 and 10 of the compliant that started on or about February 2, 2016, and that resulted in Plaintiff being subjected to unjust, unmerited, unwarranted and unlawful discriminatory employment and personnel decisions, that created adverse employment determination, namely termination on February 8, 2016

7. Plaintiff filed timely charges against the Defendant on April 15, 2016 with the United States Equal Employment Opportunity Commission, Regional District Office of Memphis, Tennessee.  The Commission issued Plaintiff a Dismissal and Notice of Rights dated April 29, 2016. **Exhibit # 1 and Exhibit # 2**

8. Because of plaintiff's (1) ___ _ ___ Race, (2) ___ **X** __color, (3) _  (4) ___religion, (5) ___national origin (6) ___ _ (7) __ _Disability; Age; (8)_ _Retaliation :  Defendant:

   (a)_____  failed to employ plaintiff.

   (b) ___ X ____terminated plaintiff's employment.

9. The circumstances under which the defendant discriminated against plaintiff are as follows: (all documents referenced in paragraph 9 are all found in **Collective Exhibit #2 through Exhibit # 5**

a. Plaintiff was hired on November 6, 2006 by the Defendant.

b. Plaintiff was hired as a Production Inspector by Defendant.

c. Plaintiff's compensation and wages at the time of hire was $14.50 an hour.

d. Plaintiff reported to   Defendant's Quality Supervisor, Richard Alstrander.

e. Plaintiff received performance evaluations annually.

f. Plaintiff's performance evaluations were rated good every year.

g. Plaintiff was promoted in 2012.

h. Plaintiff was promoted to the position of Quality Lab.

i. Plaintiff's compensation and wages in his new promotion was $19.23 an hour.

j.  Plaintiff reported to Richard Alstrander in his promoted position of Quality Control.

k.  Plaintiff received and was awarded his five (5) year certificate for his service to Defendant.

l.  Plaintiff received  training running the cmm machines in Quality Lab when he was promoted.

m.  Plaintiff's primary job duties was to make sure all parts meet standard specification on cmm machines.

n.  Plaintiff was required to ensure that the inspection of engines block that was being manufactured

o.  On February 2, 2016, Plaintiff's team leader Brandon had some issues in the Lab.

p.  An issue regarding the lab being cleaned up after the beginning of each shift change.

q.  Defendant has a five S  as a symbol for cleaning up when messing the Lab up.

r.  Defendant's Team Leader, Brandon informed Plaintiff that it was his job to 5-S (clean up the mess in the Lab).

s.  Plaintiff responded to Defendant's Team Leader, Brandon that it was everyone's duty to five-s.

t.  Plaintiff called his Supervisor back from the Quality Lab.

u.  While Plaintiff was waiting for his supervisor, Defendant's Team Leader, Brandon came up to Plaintiff in a threatening manner.

v.  The threatening manner Defendant's Team Leader, Brandon came up to Plaintiff included him telling Plaintiff that he was not afraid of him (Plaintiff).

w.  Plaintiff placed his hands up in his defense to the threatening words and gesture by Defendant's Team Leader, Brandon.

x. Defendant's employee, Team Leader Clitus Boyd was there when Defendant's Team Leader Brandon walked up and threaten Plaintiff.

y. Defendant's employee, Team Leader Clitus Boyd agreed with Defendant's employee, Team Leader Brandon Hollisworth by stating that Plaintiff pushed Brandon.

z. Defendant's employee, Team Leader Clitus Boyd never stated that Brandon threaten Plaintiff first.

aa. Defendant's employee, Team Leader Clitus Boyd inaction od not correcting stating the accurate fact is the sole reason the whole issue came about.

bb. Plaintiff's supervision and management structure showed up but it was too late because employee Brandon had already stepped to Plaintiff and threaten him.

cc. Defendant's management advised Brandon to just forget about it.

dd. Defendant's employee Brandon, informed Plaintiff that he was going to the Office to report that he put his hands on Plaintiff.

ee. Plaintiff was walked out by Defendant.

ff. Defendant asked Plaintiff for his badge.

gg. Defendant informed Plaintiff that they would conduct an investigation into the incident that occurred on February 2, 2016.

hh. Defendant did not conduct a investigation into the hostile work environment created by Brandon Hollisworth, a light skinned African American male.

ii. On February 8 2016 Defendant through its Management (David Haslum and Angela Calhoun) called Plaintiff and informed him that he was terminated.

jj. Plaintiff was terminated after nine (9) years of service for the defendant.

kk. Defendant's employee, Brandon Hollisworth, a light skinned African American male was not subjected to termination as Plaintiff was.

ll. Plaintiff's termination ended his career.

mm.   Plaintiff's compensation, wages and bonus ended

nn. Plaintiff only had one (1) write-up in nine (9) years.

oo. Plaintiff reported to Defendant's Management, Rich Alstrander.

pp. Plaintiff also reported to Defendant's Management Soplonia Jenning

qq. Plaintiff also reported to Dan Young.

rr. Plaintiff also reported to Defendant's Management Shaun Daily

ss. Plaintiff also reported to Defendant's Management Steve Holmes.

tt. Plaintiff always showed and demonstrated respect for people.

uu. Defendant's pillars of success include respect for people.

vv. Defendant's management David Haslum did not give Plaintiff the benefit of the doubt in regards to company policy.

ww.   Plaintiff acted in self-defense.

xx. Defendant's management Shun Daily is over and in charge of all operations.

yy. Defendant fired Plaintiff, a dark skinned African American male for workplace violation on February 8, 2016 following a physical altercation on February 2, 2016.

zz. Defendant did not terminate employee Brandon Hollingsworth, a light skinned African American male, for workplace violence after his physical altercation with Plaintiff Edwin Ballard.

aaa.    Defendant's light skinned Human Resources representative (Angela Calhoun) and male white Operations Manager (Davis Haslum), terminated Plaintiff, a dark skinned African American male.

bbb.    Defendant's light skinned Human Resources representative (Angela Calhoun) and white Operations Manager (Davis Haslum), did not terminate a light skinned employee for workplace violence.

ccc.    Plaintiff filed for unemployment benefits on February 10, 2016 with the Tennessee Department of Labor & Workforce Development.

ddd.    On February 23, 2016, the Tennessee Department of Labor & Workforce Development found that Plaintiff was discharged under disqualifying conditions.  On April 13, 2016, Plaintiff filed an appeal with the Tennessee Department of Labor & Workforce Development's Appeals Tribunal.

eee.    On May 25, 2016 a hearing was held where Plaintiff testified.

fff. Plaintiff testified before the Tennessee Department of Labor & Workforce Development's Appeals Tribunal that he reported to work and found that his work area in the Lab was dirty.

ggg.    Plaintiff testified before the Tennessee Department of Labor & Workforce Development's Appeals Tribunal that all employees working in the area were to clean up after they used it.

hhh.    Plaintiff testified before the Tennessee Department of Labor & Workforce Development's Appeals Tribunal that he asked his coworker who was last in the Lab, Brandon if he would clean the area before he left.

iii. Plaintiff testified before the Tennessee Department of Labor & Workforce Development's Appeals Tribunal that his co-worker, Brandon told him that Plaintiff could clean it up.

jjj. Plaintiff testified before the Tennessee Department of Labor & Workforce Development's Appeals Tribunal that he (Plaintiff) walked away and telephoned his Supervisor.

kkk.   Plaintiff testified before the Tennessee Department of Labor & Workforce Development's Appeals Tribunal that while he was waiting on the arrival of the Supervisor, his coworker, Brandon came to him.

lll. Plaintiff testified before the Tennessee Department of Labor & Workforce Development's Appeals Tribunal that a verbal altercation occurred with his co-worker.

mmm. Plaintiff testified before the Tennessee Department of Labor & Workforce Development's Appeals Tribunal that he (Plaintiff) put up his hand in an effort to block his co-worker from touching him.

nnn.   Plaintiff testified before the Tennessee Department of Labor & Workforce Development's Appeals Tribunal that he (Plaintiff) did not curse or push his co-worker.

ooo.   Plaintiff testified before the Tennessee Department of Labor & Workforce Development's Appeals Tribunal that the co-worker Brandon reported to Management that Plaintiff pushed him.

ppp. Plaintiff testified before the Tennessee Department of Labor & Workforce Development's Appeals Tribunal that he (Plaintiff) had no prior warnings or issues involving inappropriate behavior

qqq. The Tennessee Department of Labor & Workforce Development's Appeals Tribunal concluded that the evidence presented by Defendant's representative (Attorney Team Member Relations Specialist and Engineer Quality Manager) failed to establish proof that Plaintiff engaged in misconduct.

rrr. The Tennessee Department of Labor & Workforce Development's Appeals Tribunal concluded that the evidence established that Plaintiff and his co-worker had a verbal exchange.

sss. The Tennessee Department of Labor & Workforce Development's Appeals Tribunal concluded that the evidence established that Plaintiff did put up his hands in an effort to block the co-worker from touching him.

ttt. The Tennessee Department of Labor & Workforce Development's Appeals Tribunal concluded that the evidence established that Plaintiff did not curse or push the co-worker.

uuu. The Tennessee Department of Labor & Workforce Development's Appeals Tribunal concluded that the evidence established that the co-worker reported to Management that Plaintiff pushed him.

vvv. The Tennessee Department of Labor & Workforce Development's Appeals Tribunal concluded that the evidence established that Plaintiff was a long term employee that had no prior warnings involving inappropriate behavior.

www. The Tennessee Department of Labor & Workforce Development's Appeals Tribunal concluded that the evidence established that Plaintiff was discharged but the alleged misconducted testified by the Defendant, did not establish that the misconduct was connected with work was not shown.

xxx. The Tennessee Department of Labor & Workforce Development's Appeals Tribunal concluded that the evidence established that hearsay testimony standing alone, could not be used by the Defendant to established misconduct where the Plaintiff was present to refute the testimony.

yyy. The Defendant fired Plaintiff, a dark skinned African American male after they subjectively discounted his version of a physical altercation with a light skinned African American male co-worker.

zzz. The Defendant did NOT fire a light skinned African American male that was involved in the same physical altercation that Plaintiff, a dark skinned African American male was in.

aaaa. Defendant subjectively accepted the version of the light skinned African American male employee over the explanation provided by Plaintiff, dark skinned African American.

bbbb. Plaintiff believes that the personnel records of Brandon Hollisworth and Jerry Allen, both light skinned African American male coworkers will reflect that they were treated more favorably than Plaintiff was regarding the terms and condition of their employment.

cccc. Plaintiff believes that the personnel records of Brandon Hollisworth and Jerry Allen, both light skinned African American male coworkers will reflect that they were treated more favorably than he was regarding issuance or lack of issuance of disciplinary actions.

dddd. Plaintiff believes that the personnel records of Justin Furrow and Jerry Allen, both non-African American male coworkers accused of Company violations, that were lighter than Plaintiff will reflect that they were treated more favorably than Plaintiff was regarding issuance or non-issuance of disciplinary actions

eeee.  Plaintiff believes that the personnel records of Justin Furrow and Jerry Allen, both non-African American male coworkers, that were lighter than Plaintiff will reflect that they were treated more favorably than Plaintiff was regarding the terms and conditions of their employment.

ffff. Plaintiff was discharged by Defendant's male white Quality Supervisor for untrue statements made by a light skinned African American male over the explanation by Plaintiff, a dark skinned African American Male.

gggg. Defendant's male white Quality Supervisor did not terminate Justin Furrow and Jerry Allen, both non-African American male coworkers, that were lighter than Plaintiff.

hhhh. Defendant's employee, Cletis Boyd was the only eye witness on site regarding the altercation involving plaintiff as he saw Brandon Hollingsworth walked up to Plaintiff and threaten him

iiii.  Defendant's employee, Cletis Boyd was the only eye witness on site regarding the altercation involving plaintiff did not tell the truth.

jjjj. Defendant stated in the February 8, 2016 termination letter to Plaintiff that Plaintiff was terminated effective immediately due to violating the workplace violence policy and the Toyota Way. **EXHIBIT # 3**

12

kkkk.  Defendant stated in the February 8, 2016 termination letter to Plaintiff that ANY form of violence was in violation of the workplace violence policy.

llll. Defendant stated in the February 8, 2016 termination letter to Plaintiff that violence behavior included physical aggression, threats, and intimidation that may result in personal injury or property damage.

mmmm. Defendant did not terminate Brandon Hollisworth, light skinned African American male for violating the workplace violence policy.

nnnn. Defendant was fully aware that Brandon Hollisworth, light skinned African American male that was involved in the same physical altercation that resulted in Plaintiff's, a dark skinned African American male, termination.

oooo. Defandant was fully aware that Brandon Hollisworth, light skinned African American male that was involved in the same physical altercation that was considered violent behavior that included physical aggression, threats, and intimidation.

pppp. Defendant did not apply the workplace violence policy to Brandon Hollisworth, light skinned African American male the same way it did towards Plaintiff, a dark skinned African American male.

qqqq. Defendant issued Plaintiff, a dark skinned African American male a separation notice dated February 8, 2016 that stated that he was discharged because he violated the work place violence policy by pointing his finger in another team member's face and by physically pushing him.

rrrr. Defendant did not issue Brandon Hollisworth, light skinned African American male that was involved in the same physical altercation, a separation notice. **EXHIBIT # 3**

ssss. Defendant through its legal representative and two management personnel *failed to prove* and establish to the Tennessee Department of Labor and Workforce Development Appeals Tribunal in an unemployment benefits hearing, that Plaintiff pointing his finger in another team member's face and by physically pushing him. **EXHIBIT # 4**

tttt. The Tennessee Department of Labor, Appeals Tribunal concluded that Plaintiff was not the aggressor and that he only held his hand up in defense towards the violent behavior that included physical aggression, threats, and intimidation of Defendant's employee, Brandon Hollingsworth, a light skinned African American male employee.

uuuu. Plaintiff believes that Defendant's employees Antonio Reeve, Andre Mckenny and Terrill Henderson are additional witnesses to the treatment of Plaintiff at the Defendant's work site.

vvvv. Plaintiff 's termination ended his regularly scheduled  compensation and wages payroll check normally received from Defendant. **EXHIBIT 5**

10.  The acts set forth in paragraphs 9 of this complaint:

 (a) __ __ are still being committed by defendant.

 (b)__ **X** ____ are no longer being committed by defendant.

 (c)__ _____may still be being committed by defendant.

11.  Plaintiff attaches to this complaint a copy of the charges filed with Equal Employment Opportunity Commission.

**WHEREFORE**, Plaintiff prays that the following relief be granted following a jury verdict in his favor:

(a)____ Defendant be directed to employ plaintiff,

(b)__ **X** __Defendant be directed to re-employ plaintiff,

(c)____ Defendant be directed to promote plaintiff

(d) **X** ____Defendant be directed to pay:

1.) Compensatory damages against Defendant in an amount to be determined by the jury but not less than $300,000 to include all lost compensation and wages and benefits 2) Any and all other pecuniary losses proximately caused by Defendant's unlawful conduct; 3.) Punitive damages against Defendant in an amount to be determined by the jury; 4.) All costs, disbursements, pre-judgment interest, post-judgment interest, expert witness fees and reasonable attorneys' fees allowed under actions brought pursuant to 42 U.S.C. § 1981; 5) Such further relief as is deemed just and proper and appropriate including injunctive relief.

**Edwin Ballard, Plaintiff Signature** _Edwin Ballard_

**Printed Name** _Edwin Ballard_

**Plaintiff Address** _129 Dogwood Cr Medina Tn_

**Date** _7·29·16_

15